NEW JERSEY BELL TELEPHONE COMPANY, PROSECUTOR, v. THE STATE BOARD OF TAXES AND ASSESSMENT, DEFENDANT.

Submitted October 13, 1928—Decided December 6, 1928.

Before Justices MINTURN, BLACK and CAMPBELL.

For the prosecutor, *Wall, Haight, Carey & Hartpence* and *Franklin Briggs.*

For the defendant, *John Solan* and *Edward L. Katzenbach,* attorney-general of New Jersey.

The opinion of the court was delivered by

BLACK, J. The *certiorari* in this case was allowed to review the taxes assessed by the state board of taxes and assessment against the prosecutor, the New Jersey Bell Telephone Company, for the year 1928, pursuant to the provisions of the Voorhees Franchise Tax act. *Pamph. L.* 1900, *p.* 502, as the same has been amended by the acts *Pamph. L.* 1917, *p.* 42; *Pamph. L.* 1918, *p.* 907; *Pamph. L.* 1927, *p.* 567, and *Pamph. L.* 1928, *p.* 223. The latter act has no application to this controversy, that act simply imposes upon the prosecutor, as the successor to part of the business of the New York company the tax to which the latter would have been subject under the act (*Pamph. L.* 1900, *p.* 502) had it continued to do business in New Jersey during the year 1928.

The sole reason assigned for setting aside the tax was the method by which the amount of the tax was computed. The allegation is, that in so far as it is based in part upon gross receipts derived from interstate commerce, it is a regulation of and burden upon interstate commerce, in violation of article one (1), section eight (8), paragraph three (3) of the constitution of the United States.

The method by which the state board of taxes and assessment adopted in calculating the tax under review is as follows:

MEMORANDUM SHOWING CALCULATION OF GROSS RECEIPTS
TAXABLE AND AMOUNT OF TAX FOR YEAR 1928.

This calculation is made in accordance with provisions of chapter 195, laws of 1900, as amended, using gross receipts and lengths of line as reported by the New Jersey Bell Telephone Company in their annual report to this board—

Gross receipts of New York Telephone Company from
     January 1st, 1927, to October 1st, 1927:
    From intrastate business ................ ..... $19,103,675.59
    From interstate business ...... .............. 5,898,870.78

                                                          $25,002,546.37

Length of whole line, New York Telephone Company .................... 10,829 miles
Length of line on public highway, New York Telephone Company .......... 5,516 miles
Taxable gross receipts
    5,516 X $25,002,546.37=                $12,735,621.53
  —————
10,829

Gross receipts of New Jersey Bell Telephone Company
    from January 1st, 1927, to December 31st, 1927:
    From intrastate business ..................... $11,742,764.87
    From interstate business ..................... 3,535,020.81
                             $15,277,785.68

        Total gross receipts ..................... $40,280,332.05

Length of whole line, New Jersey Bell Telephone Company ............... 15,203 miles
Length of line on public highway, New Jersey Bell Telephone Company ..... 8,403 miles
Taxable gross receipts
    8,403 X $15,277,785.68=              $8,444,335.52
  —————
15,203

        Total taxable gross receipts ............. $21,179,957.05
        Tax at 5%=$1,058,997.85

The pertinent parts of the statute under which the tax was calculated and assessed are as follows:

Sec. 1. "All the property, real and personal, and franchises of all persons, co-partnerships, associations or corporations, other than municipal or corporations taxed under the act," &c., that "have or may hereafter have the right to use or occupy and occupying the streets, highways, roads, lanes or public places in this state, shall hereafter be valued, assessed and taxed as hereinafter provided." *Pamph. L.* 1900, *p.* 502, as amended by *Pamph. L.* 1917, *p.* 42.

Sec. 8. "The franchise taxes imposed by this act shall be in lieu of all other franchise taxes now assessed against the persons, co-partnerships, associations or corporations, subject to the provisions of this act and their property." *Pamph. L.* 1900, *p.* 502, as amended by *Pamph. L.* 1902, *p.* 477.

Sec. 4. "All such persons, &c., having part of his, her or its lines or mains in this state and part thereof in another state or states, or having part of his, her or its lines or mains on private property and part thereof on public streets, highways, roads, lanes or other public places, shall make a report showing the gross receipts of his, her or its business over, in, on and from the whole line or mains, together with a statement of the length of the whole line or mains and the length of the line or mains in this state along any street, highway, road, lane or other public place; and the franchise tax of such person, &c., for business so done in this state, shall be upon such proportion of such gross receipts as the length of the lines or mains in this state, along, in, on or over any street, highway, road, lane or other public place bears to the length of the whole line or mains." *Pamph. L.* 1927, *p.* 567, § 4.

This precise question was before this court in the case of *Phillipsburg, &c., Railroad Co.* v. *State Board of Assessors,* 82 *N. J. L.* 49. That case, however, was decided under the act of *Pamph. L.* 1906, *p.* 844; but that statute was a copy of the act (*Pamph. L.* 1900, *p.* 502, § 4) involved in this controversy. The same point was considered in the case of *Phillipsburg Transit Co.* v. *State Board of Taxes and Assessment,* 99 *Id.* 319; *affirmed,* 101 *Id.* 225; under *Pamph. L.* 1906, *p.* 644, §§ ½, 4, as amended by *Pamph. L.* 1918, *p.* 903.

The facts of the case under review and the law pertinent thereto are similar to the facts and the law involved in those cases. The act (*Pamph. L.* 1906, *p.* 644, § 4) under which the Phillipsburg case was decided and the act under discussion (*Pamph. L.* 1900, *p.* 502), so far as this controversy is concerned, the pertinent parts of the acts are identical, as stated above; the act *Pamph. L.* 1906, *p.* 644, was copied from the act of *Pamph. L.* 1900, *p.* 502.

So, we feel bound to follow the case of *Phillipsburg, &c., Railroad Co.* v. *State Board of Assessors, supra.* We think, however, that case was rightfully decided and quite independent of that case, we think the method adopted by the state board of taxes and assessment in the instant case was not illegal and not in violation of the commerce clause of the

United States constitution, but in harmony with the decisions of the United States Supreme Court, the ultimate authority on the point here involved.

It would be a hopeless task to even attempt to harmonize the decisions of that court on this point, much more it would be a useless task, as that court is the sole and ultimate authority on the subject. The application of these decisions to specific cases, as they arise, must be made by that court, and as has been said by this court in reference to those decisions, they would gain nothing by our concurrence and suffer nothing by our dissent. *Erie Railroad Co.* v. *Public Utility Commissioners,* 89 *N. J. L.* 59, 90. It may not be amiss, however, to point out the cases which the state relies upon for sustaining the method adopted for calculating the amount of the tax in the present case.

*Adams Express Co.* v. *Ohio State Auditor,* 165 *U. S.* 194; *Cudahy Packing Co.* v. *State of Minnesota,* 246 *Id.* 450. In that case it was said, the nature and effect of taxes more or less like this has been repeatedly considered in this court. In some instances its solution has been attended with considerable difficulty, for while the controlling general principles have long been well settled, it has not been easy to apply them to all the varying situations presented. *Pullman Co.* v. *Richardson,* 261 *Id.* 330; *State of Maine* v. *Grand Trunk Railway Co.,* 142 *Id.* 217.

On the other hand, the prosecutor relies upon the cases of *State of Maine* v. *Grand Trunk Railway Co., supra; Philadelphia, &c., Steamship Co.* v. *Pennsylvania,* 122 *U. S.* 326; *Galveston, &c., Railway Co.* v. *Texas,* 210 *Id.* 217; *Meyer, &c., Oklahoma* v. *Wells Fargo, &c., Co.,* 223 *Id.* 298.

The prosecutor insists that these cases hold that license or franchise taxes based on gross receipts partly derived from interstate commerce are illegal. Such taxes are an unlawful regulation of or burden upon interstate commerce, in so far as they are based on gross receipts derived from interstate commerce.

The state distinguishes the cases above cited from the present case and urges, in the case at bar, the tax in question is

the only one imposed by statute upon the property right, *i. e.*, the franchise right of the prosecutor, to use the public streets, and that, in valuing that property right account may be taken under the doctrine in the case of the *United States Express Co.* v. *State of Minnesota*, 223 *U. S.* 335, of the total receipts of which the employment of such special franchise gives rise, including receipts from interstate commerce, or as expressed by Mr. Justice Van Deventer, in the case of *Cudahy Packing Co.* v. *State of Minnesota, supra;* it was not in reality a tax on the gross earnings, but was a tax on the property, the earnings being taken merely as an index or measure of the value of the property for taxing purposes. We think that is the situation in this case. The method adopted for calculating the tax, viz., the gross earnings being taken merely as a measure of the value of the franchise of the prosecutor.

The tax brought under review is affirmed and the writ of *certiorari* is dismissed.